Nathan Phelps (14752)
*Law Office Of Nathan Phelps*
11775 Shadow View Lane
Draper, Utah 84020
Telephone: (801) 999-0399
Facsimile: (801) 206-3949
nate.phelps@gmail.com

*Attorney for Petitioner–Plaintiff*

## In the United State District Court
## for the District of Utah

| | |
|---|---|
| Victoria Mendoza, | Response to Motion to Dismiss Mendoza's Petition; |
|       Petitioner – Plaintiff, | |
| | Response to Motion to Dismiss Weber County as a Defendant; |
| v. | |
| Terry Thompson *et al.*, | Reply to Objection to Preliminary Injunction |
|       Respondents – Defendant. | Case No. 1:15-cv-090-DN |
| | Judge David Nuffer |

Petition–Plaintiff Victoria Mendoza, through her counsel Nathan Phelps, hereby enter this response to Respondent's motion to dismiss Mendoza's complaint (Doc. 20), Respondents' motion to dismiss Weber County as a party (Doc. 16), and a reply to Respondents' objections to Mendoza's motion for a preliminary injunction. (Doc. 21). Counsel enter his omnibus response/reply because they all involve the same core issues of law.

Mendoza requests that this Court deny both motions to dismiss and grant the preliminary injunction over the Respondents' objections.

## TABLE OF CONTENTS

I.   ARGUMENT ............................................................................................ 1

    A.   The choice-of-counsel issue ..................................................... 2

    B.   The State's motion to dismiss Mendoza's complaint must be denied. ... 7

        1.   This Court has subject-matter jurisdiction .................................. 7

        2.   Mendoza's claims are cognizable under § 2241 and § 1983 ......... 8

        3.   Mendoza has no need to exhaust state court remedies................ 8

    C.   The State's motion to dismiss Weber County as a party must be denied........................................................................................... 10

    D.   This Court should enter a preliminary injunction despite the State's objections.......................................................... 10

        1.   The principle of Younger abstention is not a bar to an injunction........................................................................... 11

        2.   A preliminary injunction is justified under the circumstances of this case.................................................................................. 13

II.   Conclusion ........................................................................................ 16

# TABLE OF AUTHORITIES

## Cases

*Ake v. California*, 470 U.S. 68 (1985) .................................................................. 2, 4, 6

*Arkansas Public Defender v. Pulaski County*, 365 S.W.3d 193 (Ark. 2010) ............... 4

*Britt v. North Carolina*, 404 U.S. 226 (1971) .................................................. 2

*Chao v. State*, 780 A.2d 1060 (Del. 2001) ....................................................... 5

*Dunn v. Roberts*, 963 F.2d 308 (10th Cir. 1992) ............................................. 2

*English v. Missildine*, 311 N.W.2d 292 (Iowa 1981) ......................................... 5

*Faretta v. California*, 422 U.S. 806 (1975) ...................................................... 6

*Hunt v. Mitchell*, 261 F.3d 575 (6th Cir. 2001) ............................................... 3

*In re T.W.*, 932 N.E.2d 125 (Ill. App. 2010) .................................................... 4

*Johnson v. Gibson*, 169 F.3d 1239 (10th Cir. 1999) ........................................ 2

*Kikumura v. Hurley*, 242 F.3d 950 (10th Cir. 2001) ........................................ 13

*Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S.Ct. 2586 (2013) .................... 3

Lefkowitz v. Cunningham, 431 U.S. 801 (1977) ................................................ 3

*Moore v. State*, 889 A.2d 325 (Md. 2005) ...................................................... 5

*Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496 (1982) ........................... 9

*People v. Cardenas*, 62 P.3d 621 (Colo. 2002) ............................................... 4

*People v. Ulloa*, 766 N.Y.S.2d 699 (N.Y. App. Div. 2003) ................................. 5

*Phelps v. Hamilton*, 59 F.3d 1058 (10th Cir. 1995) ......................................... 11

*Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281
     (10th Cir. 2007) ....................................................................................... 9

*Simmons v. United States*, 390 U.S. 377 (1968) ........................................ 3, 4, 6, 13

*State v. Brouillette*, 98 A.3d. 1131 (N.H. 2014) .............................................. 4

*State v. Brown*, 134 P.3d 753 (N.M. 2006) .................................................................... 5

*State v. Burns*, 2000 UT 56, 4 P.3d 795 ...................................................................... 6

*State v. Earl*, 2015 UT 12, 345 P.3d 1153 ................................................... 4, 9, 12, 13

*State v. Frank*, 803 So.2d 1 (La. 2001) ....................................................................... 5

*State v. Huchting*, 927 S.W.2d 411 (Mo Ct. App. 2002) ............................................. 5

*State v. Larson*, 2008 UT App 360 (unpublished) ...................................................... 3

*State v. Wang*, 92 A.3d 220 (Conn. 2014) ............................................................... 5, 6

*State v. Williams*, 134 S.W.3d 766 (Mo Ct. App 2004) ............................................. 5

*Tran v. Superior Court*, 112 Cal Rptr. 2d 506 (Cal Ct. App. 2002) ........................... 5

*United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006) ................................ 2, 3, 4, 5, 6

*Walck v. Edmondson*, 472 F.3d 1227 (10th Cir. 2007) ............................... 7, 11, 12, 14

*Widdis v. State*, 968 P.3d 1165 (Nev. 1998) ............................................................... 5

*Williams v. State*, 818 A.2d 906 (Del. 2002) ............................................................. 5

*Winnebago Tribe of Nebraska v. Stovall*, 341 F.3d 1202 (10th Cir. 2003) ............... 11

**Statutes**

28 U.S.C. § 2254 ................................................................................................ 9

28 U.S.C. 2243 ................................................................................................. 10

Utah Code § 76-5-203 ....................................................................................... 1

Utah Code § 77-32-301 ................................................................................... 10

Utah Code § 77-32-302 ..................................................................................... 6

Utah Code § 77-32-303 ................................................................................. 4, 6

**Other Authorities**

John P. Gross, *Representation by Counsel or Access to Defense Resources: Utah's Single Source Approach to Indigent Defense*, 72 Wash. & Lee L. Rev. Online 51 (2015), http://scholarlycommons.law.wlu.edu/wlulr-online/vol72/iss1/3 ................. 5

# I.

# <u>ARGUMENT</u>

This Court is aware of the essential facts of this case. Mendoza is currently in the custody of the Weber County Sheriff. At the end of November, she is scheduled to be tried for murder, a first-degree felony under Utah Code § 76-5-203. If convicted, she faces an indeterminate term of 15 years to life in prison. *Id.*

At this point, Utah state law has placed before the indigent Mendoza an impossible choice: stick with the counsel she trusts but forego any expert assistance necessary for her defense, or give up the attorney of her choice to get that expert assistance.

In her complaint, Mendoza explains one of the big reasons why she does not want to accept as her counsel any of the attorneys who, pursuant to contract with Weber County, provide assistance to indigent defendants. Indeed, she has made the point so clear that the State[1] responds almost as if the deficiencies in the Weber indigent defense system were the only issue raised.

But it is not. Indeed, the ineffective assistance she will receive if she is forced to give up her present retained counsel for defense resources is only a secondary issue. Mendoza's primary concern, and the cornerstone of her complaint is this: as an indigent defendant with retained counsel, Utah's Indigent Defense Act unconstitutionally forces her to waive one right to exercise another. Moreover, she

---

[1] Throughout this memorandum, the various respondents and defendants, represented by the Utah Attorney General's Office, are simply referred to as "the State."

is challenging this unlawful deprivation under 42 U.S.C. § 1983, not just 28 U.S.C. § 2241.

As shall be demonstrated, this cornerstone issue answers all of Weber County's objections, especially when it is considered under § 1983.

## A.    The choice-of-counsel issue

Because it appears to have been misunderstood, the following section explains the choice-of-counsel issue step-by-step. However, those steps are pretty short, as just three fundamental principles frame it.

First, both the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment require states to "provide indigent prisoners with the basic tools of an adequate defense."[2] Among those "basic tools" are psychiatric and forensic experts.[3] For brevity, we will call this the *Ake* principle.

The second guiding principle in this suit is the choice-of-counsel right inherent in the Sixth Amendment.[4] "The right to select counsel of one's choice . . . has been regarded as the root meaning of the constitutional guarantee."[5] When a defendant is wrongly denied her choice of counsel, it is *structural* error that renders any resulting judgment void.[6] While the right to select counsel of choice is not absolute, the only relevant limit here is that it "does not extend to defendants who

---

[2] *Britt v. North Carolina*, 404 U.S. 226, 227 (1971); *Ake v. California*, 470 U.S. 68, 76 (1985).

[3] *See, e.g.*, *Johnson v. Gibson*, 169 F.3d 1239, 1246–47 (10th Cir. 1999); *Dunn v. Roberts*, 963 F.2d 308, 312–14 (10th Cir. 1992).

[4] *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147–48 (2006).

[5] *Id.*

[6] *See id.* at 148–51.

*require* counsel to be *appointed* for them."[7] In other words, indigent defendants who require a court to appoint counsel can't pick who will be appointed. This is the *Gonzalez-Lopez* principle.

Finally, there is the *Simmons* principle—the idea that the exercise of one constitutional right may not be conditioned on the forfeiture of another. The Supreme Court stated, "we find it intolerable that one constitutional right should have to be surrendered in order to assert another."[8] Such trade-offs aren't condemned just in the context of the Fourth Amendment right to privacy and the Fifth Amendment right against self-incrimination, the Hobson's choice presented in *Simmons.*[9] These trade-offs are condemned whenever a government forces a defendant to give up one constitutional right for another. Thus, for example, in *Lefkowitz v. Cunningham,* the Supreme Court condemned a New York statute that required political part officers to waive their right against self-incrimination or face a five-year ban on holding any public or party office. The Court held that the statute improperly forced a party officer to choose between the First Amendment Right to political association and the Fifth Amendment Right and compelled self-incrimination.[10]

---

[7] *Id.* at 151 (emphasis added).

[8] *Simmons v. United States*, 390 U.S. 377, 394 (1968).

[9] *See id.* at 389–94.

[10] 431 U.S. 801, 802–808 (1977). *See also Hunt v. Mitchell*, 261 F.3d 575, 584 (6th Cir. 2001) (improper to force choice between Sixth Amendment right to counsel and statutory speedy-trial right); *State v. Larson*, 2008 UT App 360, para. 8 n.1 (unpublished) ("We acknowledge that there is binding precedent to the effect that a defendant cannot be forced to give up one constitutional right in favor of another."); *cf. Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S.Ct. 2586, 2595 (2013) (government may not burden "the Constitution's enumerated rights by coercively

These principles irreconcilably conflict with Utah's Indigent Defense Act. The Indigent Defense Act, found in Utah Code sections 77-32-101 through -704, "foreclos[es] an indigent defendant in a criminal action from retaining private counsel while requesting public defense resources from the government . . . by generally[11] conditioning an indigent defendant's eligibility for such resources on the retention of publicly funded counsel."[12] In other words, the Indigent Defense Act forces an indigent defendant to pick between her right to her counsel of choice, as guaranteed by *Gonzalez-Lopez*, and her right to defense resources, as guaranteed by *Ake*. Under *Simmons*, compelling such a choice is intolerable. As written, the Indigent Defense Act is unconstitutional.

This argument and its conclusion are not novel. Generally, the propriety of private counsel requesting public funds for defense resources has been resolved on statutory grounds, and almost uniformly in favor of allowing the request.[13] But at least six different state courts have ruled that as a matter of constitutional law,

---

withholding benefits from those who exercise them").

[11] The Utah Supreme Court's qualification is an apparent acknowledgment that defense resources can be provided to an indigent defendant with retained counsel, but only after an intrusive hearing in which the contract between the defendant and his appointed counsel is reviewed and an accounting is made of the retainer. Utah Code § 77-32-303(3)(b). If the defendant can show by clear and convincing evidence that she would be irreparably prejudiced by having to give up her retained counsel for appointed counsel (among other things), only then will defense resources be provided to an indigent defendant with retained counsel.

[12] *State v. Earl*, 2015 UT 12, ¶ 1, 345 P.3d 1153.

[13] *See, e.g.*, *State v. Brouillette*, 98 A.3d. 1131, 1133–36 (N.H. 2014); *Arkansas Public Defender v. Pulaski County*, 365 S.W.3d 193, 194–98 (Ark. 2010); *In re T.W.*, 932 N.E.2d 125, 130–34 (Ill. App. 2010); *but see People v. Cardenas*, 62 P.3d 621, 622–23 (Colo. 2002) (denying private interpreter to indigent defendant with *pro bono* counsel on statutory grounds).

defense resources cannot be withheld from an indigent defendant who is represented by private counsel.[14] And academic who has examined Utah's Indigent Defense Act has come to the same conclusion: the Act violates the constitution by conditioning an indigent defendant's access to resources on the acceptance of appointed counsel.[15]

To be fair, at least two state courts have reached the opposite conclusion on the constitutional question.[16] But both decision predate *Gonzalez-Lopez*, the decision that made it absolutely clear that the right to counsel of choice was a

---

[14] *State v. Brown*, 134 P.3d 753, 761 (N.M. 2006); *People v. Ulloa*, 766 N.Y.S.2d 699, 700 (N.Y. App. Div. 2003); *State v. Frank*, 803 So.2d 1, 8 (La. 2001); *Tran v. Superior Court*, 112 Cal Rptr. 2d 506, 508 (Cal Ct. App. 2002) ("The test of entitlement to county assistance in defense preparation must be indigency. A test based upon the status of defense counsel would be constitutionally infirm."); *Widdis v. State*, 968 P.3d 1165, 1167–68 (Nev. 1998); *English v. Missildine*, 311 N.W.2d 292, 293–94 (Iowa 1981).

One state has not decided the constitutional question, *State v. Williams*, 134 S.W.3d 766, 772–73 (Mo Ct. App 2004), but has indicated it would likely decide in favor of an indigent with private counsel. *State v. Huchting*, 927 S.W.2d 411, 419 (Mo Ct. App. 2002).

Another state has answered a different but similar question, holding that an indigent defendant has the right to self-representation and the right to defense resources, and forcing a choice between the two would be intolerable. *State v. Wang*, 92 A.3d 220, 231–232 (Conn. 2014).

[15] John P. Gross, *Representation by Counsel or Access to Defense Resources: Utah's Single Source Approach to Indigent Defense*, 72 Wash. & Lee L. Rev. Online 51, 60–63 (2015), http://scholarlycommons.law.wlu.edu/wlulr-online/vol72/iss1/3.

[16] *See Moore v. State*, 889 A.2d 325, 345–46 (Md. 2005); *Chao v. State*, 780 A.2d 1060, 1070–71 (Del. 2001), overruled on other grounds by *Williams v. State*, 818 A.2d 906 (Del. 2002).

separate and free-standing right from the right to effective assistance of counsel.[17] Neither state case is consistent with this later Supreme Court precedent.

The Indigent Defense Act also makes an absurd distinction that underscores the unconstitutionality of the Act. As written, the Act only restricts defense resources to an indigent defendant represented by private counsel.[18] If an indigent defendant represents himself, which is also a Sixth Amendment under *Faretta v. California*,[19] there is no bar on defense resources.[20] Thus an indigent defendant can be represented by appointed counsel or by no counsel and receive defense resources, while an indigent defendant represented by private counsel, even *pro bono*, cannot. There is no rational reason for treating the Sixth Amendment right to counsel of choice as something less than the Sixth Amendment right to self-representation.

In sum, through the Indigent Defense Act, Utah has sought to implement a policy of "beggars can't be choosers" for indigent defendants seeking to exercise their constitutional rights. But under *Simmons*, forcing any defendant to pick between his rights is prohibits. Under *Ake*, *Gonzalez-Lopez*, and *Simmons*, the Indigent Defense Act must be found unconstitutional.

---

[17] 548 U.S. at 147–51.

[18] *See* Utah Code §§ 77-32-302 & -303.

[19] 422 U.S. 806 (1975).

[20] *See State v. Burns*, 2000 UT 56, ¶ 30, 4 P.3d 795, *superseded by statute on other grounds*; *see also Wang*, 92 A.3d at 240 (authorizing indigent self-represented defendants to "access funding for reasonably necessary defense costs through standby counsel").

## B.   The State's motion to dismiss Mendoza's complaint must be denied.

Mendoza's complaint list two claims—that representation by Weber County indigent defense program is constitutionally deficient and that she is wrongly being denied her choice of counsel.[21] When those claims are considered under 28 U.S.C. § 2241 *and* 42 U.S.C. § 1983, none of the State's arguments for dismissal withstand scrutiny.

### 1.   *This Court has subject-matter jurisdiction*

The State claims that this Court lacks subject-matter jurisdiction because Mendoza isn't challenging the legality of her custody.[22] This is wrong is two respects.

First, Mendoza *is* challenging the legality of her custody. As it stands now, any trial that takes place in state court will be fatally flawed. Mendoza will either be tried without counsel of her choice or she will be tried without necessary resources for her defense. It can't be claimed that holding her for an invalid trial is proper. Either she must be afforded that isn't constitutionally deficient *ex ante* or she must be released.[23]

Regardless, though, there is a simpler answer. This Court has subject-matter jurisdiction under § 1983 to hear a challenge to the Indigent Defense Act. The Act

---

[21] Doc. 2, pp. 11–13.

[22] Doc. 20, pp. 6–8.

[23] *Cf. Walck v. Edmondson*, 472 F.3d 1227, 1233–35 (10th Cir. 2007) (recognizing that § 2241 is a proper vehicle to challenge detention when an "illegitimate" trial awaits)

7

deprives Mendoza of her "rights, privileges, [and] immunities secured by the Constitution."[24] Likewise, this Court has jurisdiction to hear a challenge to the adequacy of Weber County's indigent defense program under the same statute. Mendoza's claims are properly before the Court.

### 2.    Mendoza's claims are cognizable under § 2241 and § 1983

The second argument the State makes for dismissal is that Mendoza's claims aren't cognizable under § 2241 because they don't go to her custody.[25] Essentially this is same argument as the one on subject-matter jurisdiction, dressed in different legal clothing. Like the subject-matter argument, it doesn't hold up.

First, Mendoza's challenge to the Indigent Defense Act and the adequacy of Weber County's indigent defense program are cognizable under 42 U.S.C. § 1983. Second, to the extent that Weber County is holding Mendoza for trial in constitutionally deficient proceedings, her detention is improper, and a claim of such is cognizable under 28 U.S.C. § 2241.

### 3.    Mendoza has no need to exhaust state court remedies

The State's last argument for dismissal is that Mendoza has failed to exhaust her available state court remedies, and that requires this Court should dismiss her petition.[26]

Unfortunately, the State has elided over many procedural technicalities in making its argument. While it's true that exhaustion is generally required for

---

[24] 42 U.S.C. § 1983.

[25] Doc. 20, p. 9.

[26] Doc. 20, pp. 10–12.

claims under § 2241, the exhaustion requirement is not identical to that for post-conviction claims under 28 U.S.C. § 2254. The latter has strict, statutory exhaustion requirements that the former doesn't.[27] This is significant, because while Mendoza did voluntarily dismiss her state interlocutory appeal, she had good reason: one of her attorneys in the state proceedings was also the attorney for the appellant in *State v. Earl*.[28] Requiring Mendoza to go through with the appeal when the *Earl* court had just determined the Indigent Defense Act to be constitutional would be an empty gesture.

Again, though, it is not necessary to go wading into deep waters. Exhaustion of state court remedies is not a requirement for a suit under 42 U.S.C. § 1983.[29] Because Mendoza's claims sound under both § 2241 *and* § 1983, exhaustion is no bar.

And, because the State's arguments on subject-matter jurisdiction and the cognizability of Mendoza's claims have also failed, the State's motion to dismiss must be denied.

---

[27] *See* 28 U.S.C. § 2254(b) & (c).

[28] *See* 2015 UT 12, introductory information.

[29] *See, e.g.*, *Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1286 (10th Cir. 2007) (citing *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 516 (1982)).

## C.     The State's motion to dismiss Weber County as a party must be denied.

The State's motion to dismiss Weber County as a party to this suit has a kernel of legitimacy to it. The motion is correct that a suit under § 2241 should have Mendoza's custodian, the Weber County Sheriff, named as a respondent.[30]

However, it is once again pertinent that Mendoza has filed suit under 42 U.S.C. § 1983. Under Utah law, Weber County is responsible for providing defense services for indigent defendants prosecuted by the County.[31] Because Mendoza alleges, among other things, that Weber County inadequately funds its indigent defense program to the extent that it fails to render effective assistance of counsel, Weber County is a proper defendant in this suit. For that reason, the State's motion to dismiss must be denied.[32]

## D.     This Court should enter a preliminary injunction despite the State's objections

The State has objected to the entry of a preliminary injunction on three grounds.  The first ground—that Mendoza's suit should be dismissed outright—just repeats the arguments that were made for dismissal. Because it has already been refuted above, it will not be addressed again in this part.

---

[30] Doc. 16, pp. 1–3 (citing 28 U.S.C. 2243).

[31] *See* Utah Code § 77-32-301(1).

[32] Any necessary parties that aren't currently parties to this suit will be added once this Court resolves the State's motion to dismiss.

10

Beyond that, the State has argued that no preliminary injunction should be imposed because of *Younger* abstention and because Mendoza has not the requirements for a preliminary injunction. Neither argument withstands scrutiny.

### 1.   The principle of Younger abstention is not a bar to an injunction

The State is correct that abstention under *Younger v. Harris* is a relevant consideration.[33] Indeed, it is probably true that the "ongoing" state proceedings "implicate an important state interest" and "offer an adequate opportunity to litigate federal constitutional issues."[34] But that issue need not be decided because there exists "extraordinary circumstance[s] warranting federal intervention."[35] When such extraordinary circumstances exist, abstention is not required.[36]

The first extraordinary circumstance present here is the fact that the challenged statute, the Indigent Defense Act, is patently unconstitutional.[37] Although this exception is not well-defined,[38] it is nevertheless applicable by its very terms here. And discussed above, because the Act forces an indigent defendant to pick between two independent constitutional rights, it is fatally flawed.

---

[33] Doc. 21, pp. 9–12.

[34] Doc. 21, p. 10 (quoting *Winnebago Tribe of Nebraska v. Stovall*, 341 F.3d 1202, 1204 (10th Cir. 2003)).

[35] *Walck v. Edmondson*, 472 F.3d 1227, 1233 (10th Cir. 2007).

[36] *Younger v. Harris*, 401 U.S. 37, 53 (1971).

[37] *Phelps v. Hamilton*, 59 F.3d 1058, 1063–64 (10th Cir. 1995) (citing *Younger*, 501 U.S. 53–54).

[38] *See Phelps*, 59 at 1064.

11

The second extraordinary circumstance present is the fact that Mendoza will suffer "irreparable injury."[39] "[A] threat to an individual's federally protected rights constitutes irreparable injury where the threat 'cannot be eliminated by . . . defense against a single criminal prosecution.'"[40] If, as Mendoza has argued, the Indigent Defense Act is unconstitutional, the trial scheduled to begin at the end of November will be a pointless affair. Any guilty verdict the results will be eventually overturned, whether by the Supreme Court, when it reverses the just-issued decision of *State v. Earl*, or, if it sticks with its error, when Mendoza inevitably brings her case back to this Court for post-conviction review. Either way, the unconstitutional Indigent Defense Act will force Mendoza through multiple criminal prosecutions in which she will "endure the personal strain, public embarrassment, and expense of a criminal trial."[41]

"[A]lthough notions of comity and federalism carry heavy weight in our system of government, such notions do not mean that the federal courts must sit idly by while the rights conferred on a criminal accused by the [Sixth Amendment's Assistance of Counsel Clause] [are] significantly undermined."[42] Because extraordinary circumstances exist, this Court should not abstain from enjoining the state proceedings.

---

[39] *Walck*, 472 F.3d at 1233.

[40] *Id.* (citing *Younger*, 401 U.S. at 46).

[41] *Cf. id.* at 1234 (in context of a Double Jeopardy violation).

[42] *Id.* (second alteration in the original, internal quotation omitted).

### 2.    A preliminary injunction is justified under the circumstances of this case

Beyond the argument for abstention, the State argues that an injunction is just improper in this case.[43] As the State correctly states, to obtain a preliminary injunction, Mendoza must show

> (1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is not adverse to the public interest.[44]

Contrary to the State's argument, Mendoza has carried her burden.

First, Mendoza has a substantial likelihood of success the merits because the Indigent Defense Act violates the *Simmons* principle—the fact that a defendant can't be forced to choose between two constitutional rights. The State doesn't offer any defense of the Act except to point to the parts of *State v. Earl* that find the Act constitutional.[45]On that basis alone, the State argues that Mendoza has no substantial likelihood of success on the choice-of-counsel claim.

This, of course, misses the fact that, at least for this Court, *Earl* is only persuasive authority. Whether the Indigent Defense Act is, in fact, unconstitutional is a question of law for this Court to decide, and weighing against the *Earl* decision are the six (or seven, depending on how your count) other state court decisions that have concluded that it is unconstitutional to force a defendant to choose between

---

[43] Doc. 21, pp. 13–18.

[44] *Id.* at 13 (quoting *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001)).

[45] *Id.* at 13.

13

counsel of choice and defense resources. Based on those decisions, as well as the U.S. Supreme Court authority that makes any compelled choice between right intolerable, Mendoza has succeeded in showing a substantial likelihood of success on the merits.[46]

The second required for a showing for a preliminary injunction is irreparable injury if the preliminary injunction is denied. The State argues that Mendoza has failed to show irreparable harm because she has only pointed to the 15-to-life sentence she faces if convicted, and that if she is forced to go to trial, she will have the service of counsel with an "ethical obligation" to provide effective assistance.[47] This short-sighted view of the situation ignores that, whatever happens, Mendoza will be forced into a trial in which she has been forced to give one right or another, leaving any resulting verdict void. As already stated above, "a threat to an individual's federally protected rights constitutes irreparable injury where the threat 'cannot be eliminated by . . . defense against a single criminal prosecution.'"[48] Needlessly forcing a defendant through an illegitimate, structural deficient trial is certainly irreparable injury.

The third required showing for a preliminary injunction is a showing that the threatened injury to the Mendoza outweighs the injury to the State under the preliminary injunction. The State again minimizes the injury Mendoza will suffer, and then argues any delay will cause the victim's representative a deprivation of his

---

[46] For the moment, a preliminary injunction based on the effective-assistance of counsel claim will be reserved for a later date.

[47] Doc. 21, pp. 16–17.

[48] *Walck*, 472 F.3d at 1233 (citing *Younger*, 401 U.S. at 46).

"statutory right to a speedy resolution of the criminal process."[49] While the victim's right to a speedy resolution is worthy of respect, it just doesn't compare to Mendoza's interest in avoiding a proceeding in which in fundamental rights are violated. Moreover, if Mendoza is forced into an intrinsically flawed trial under the current Indigent Defense Act, the victim's representative will actually suffer a *greater* harm to the interest the State identifies. If the Indigent Defense Act is unconstitutional as Mendoza has alleged, then the result will be overturned, and the resolution of the criminal process will be longer, not shorter.

Finally, the fourth showing required for a preliminary injunction is a showing that the injunction is not against the public interest. The State claims that a preliminary injunction would be against the public interest because it would interfere with the State's interest in enforcing its laws and delay justice.[50] But as just discussed, if Mendoza is forced into an illegitimate proceeding, any verdict will be invalid. If the Indigent Defense Act is unconstitutional as Mendoza has shown, then a preliminary injunction will serve the interests the State raises because it will allow for a trial valid under the U.S. Constitution. Indeed, there can be no public interest in compelling a person into a structural deficient trial.

In short, if the Indigent Defense Act is unconstitutional, all the equities move in Mendoza's favor. Because the Act is unconstitutional, a preliminary injunction should issue.

---

[49] Doc. 21, pp. 17–18.

[50] Doc. 21, p. 18.

# II.

# <u>Conclusion</u>

For the foregoing reasons, Mendoza asks this Court to deny the State's motion to dismiss her petition, deny the State's motion to dismiss Weber County as a party to these proceedings, and grant Mendoza's motion for a preliminary injunction.

DATED this 14th day of September, 2015.

<u>/s/ Michael Studebaker</u>
(Signed by filing attorney with permission of co-counsel)

<u>/s/ Nathan Phelps</u>
Counsel for Victoria Mendoza