IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| VICTORIA MENDOZA,<br><br>Petitioner,<br><br>v.<br><br>TERRY THOMPSON & WEBER COUNTY,<br><br>Respondents. | **MEMORANDUM DECISION AND ORDER**<br><br>**DENYING [3] MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION;**<br><br>**DENYING [10] EXPEDITED MOTINO TO STAY STATE COURT PROCEEDINGS;**<br><br>**FINDING MOOT [16] MOTION TO DISMISS WEBER COUNTY; AND**<br><br>**GRANTING IN PART AND DENYING IN PART [20] MOTION TO DISMISS PETITION**<br><br>Case No. 1:15-cv-00090-DN<br><br>District Judge David Nuffer |

Victoria Mendoza, through counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition")[1] setting forth three claims: (1) violation of Sixth Amendment (adequate representation);[2] (2) violation of Sixth Amendment (right to choose counsel);[3] and (3) "42 U.S.C. § 1983."[4]

---

[1] Petition for Writ of Habeas Corpus ("Petition"), docket no. 2, filed July 13, 2015.

[2] *Id.* at 11.

[3] *Id.* at 12.

[4] *Id.* at 13.

Shortly after filing the Petition, Mendoza's counsel filed two separate motions: a motion for temporary restraining order/preliminary injunction ("TRO Motion")[5] and an emergency motion to stay state court proceedings ("Motion to Stay").[6] Respondents jointly filed a motion to dismiss the Petition ("Motion to Dismiss Petition"),[7] and Respondent Weber County filed a motion to dismiss itself as a party ("Motion to Dismiss Weber County") as to the § 2241 habeas claims.[8] A hearing was held on these motions on September 15, 2015 at 12:30 p.m.[9]

After the hearing, an order was entered dismissing the Petition with respect to the habeas claims brought under § 2241.[10] The only remaining claim is the third, brought under 42 U.S.C. § 1983. Additional briefing was received with respect to the § 1983 issues,[11] and another hearing was held regarding the § 1983 issues on September 24, 2015 at 10:00 a.m.[12]

For the reasons stated below, the TRO Motion and the Motion to Stay are DENIED. The Motion to Dismiss Weber County is MOOT. The Motion to Dismiss Petition is GRANTED IN PART AND DENIED IN PART.

---

[5] Motion & Memorandum of Points and Authorities in Support of Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Motion"), docket no. 3, filed July 14, 2015.

[6] Expedited Motion and Memorandum of Law to Stay State Court Proceedings ("Motion to Stay"), docket no. 10, filed July 22, 2015.

[7] Motion to Dismiss Petition for Writ of Habeas Corpus and Memorandum in Support ("Motion to Dismiss Petition"), docket no. 20, filed September 11, 2015.

[8] Motion to Dismiss Weber County as a Respondent in Petitioner's Habeas Petition ("Motion to Dismiss Weber County"), docket no. 16, filed September 3, 2015.

[9] Minute Entry, docket no. 24, entered September 15, 2015.

[10] Memorandum Decision and Order Dismissing Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, docket no. 25, entered September 16, 2015.

[11] Response to Petitioner's § 1983 Claim Challenging the Constitutionality of the Utah Indigent Defense Act, docket no. 27, filed September 21, 2015; Reply to Respondent's Response to the Challenge to Utah's Indigent Defense Act, docket no. 28, filed September 23, 2015.

[12] Minute Entry, docket no. 29, entered September 24, 2015.

## Contents

TRO MOTION.................................................................................................................. 3

    Standard Applicable to TRO or Preliminary Injunction ..................................... 4

        Irreparable Injury ................................................................................. 5

        Balance of Harms................................................................................. 6

        Public Interest ..................................................................................... 7

        Substantial Likelihood of Success ...................................................... 8

MOTION TO STAY ....................................................................................................... 21

MOTION TO DISMISS WEBER COUNTY ................................................................. 22

MOTION TO DISMISS PETITION ............................................................................... 22

ORDER ............................................................................................................................ 23

## TRO MOTION

Mendoza's TRO Motion asks for a stay of "any further court proceedings in State court while this issue is resolved;"[13] and a temporary restraining order or a preliminary injunction "requiring the government to provide funds for experts and investigative costs."[14] She argues that her "clear constitutional rights are being violated"[15] by being denied "two separate rights: the right to counsel, and the separate right to the basic tools of a complete defense."[16]

Mendoza alleges the following facts:

1. Petitioner is currently incarcerated at the Weber County Jail, of which Respondent Thompson is the elected sheriff of Weber County.

2. Petitioner is being prosecuted by Weber County, and is housed in Weber County.

3. Petitioner is incarcerated pursuant to an order of the state trial court's order dated October 22, 2014.

4. Petitioner is currently a pretrial detainee awaiting trial.

---

[13] TRO Motion at 16.

[14] *Id.*

[15] *Id.* at 3.

[16] *Id.* at 2.

5. Petitioner is challenging her pretrial detention and her federal constitutional rights.

6. Specifically, Petitioner is being represented by a private attorney for the charge of murder, and needs funds for experts and investigations. If convicted by a jury, Petitioner could face life in prison, and she was arrested when she was 22 years old.

7. Recently, a number of appeals were decided by the Utah Supreme Court, including *State v. Earl*,[17] holding that if a person is being privately represented by counsel, they are not entitled to state funds for an investigator or experts.

8. The *Earl* decision is a violation of Petitioner's 6th Amendment rights under the United States Constitution.

9. Based on the *Earl* decision, Petitioner must decide to use an overworked and underfunded public defender system, or forego an appropriate defense by using privately retained counsel.[18]

## Standard Applicable to TRO or Preliminary Injunction

To obtain a preliminary injunction, the movant must show that "(1) [the movant] will suffer irreparable injury unless the injunction issues; (2) the threatened injury . . . outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood [of the moving party's success] on the merits."[19] Where the moving party can show that the first, second, and third factors "tip strongly in [its] favor," the Tenth Circuit holds that the party may satisfy the first factor "by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate

---

[17] *State v. Earl*, 345 P.3d 1153 (Utah 2015).

[18] TRO Motion at 1-2.

[19] *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003) (first alteration in original); *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1128 (10th Cir. 2013).

investigation."[20] "Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."[21]

### *Irreparable Injury*

Mendoza argues she faces irreparable harm because there is a "real potential of life in the Utah State Prison . . . if the relief requested is not granted."[22] Mendoza also argued at the September 24 hearing that she faces irreparable harm in going to trial without adequate representation, which would force her into a trial that would be null and void. The Respondents argue that "granting injunctive relief will not necessarily avoid the harm of a long prison term" because when she is tried for murder, "she may still be convicted and sentenced to 15 years to life in prison."[23] The Respondents further argue that "denying [Mendoza's] request for a preliminary injunction will not cause her to go to trial without adequate representation" because all attorneys have an ethical obligation to provide effective representation.[24] Respondents also pointed out that Mendoza may appeal any conviction in both the state and federal courts if she is indeed convicted of the charged crime. Therefore, the Respondents argue, the harm Mendoza faces is not "irreparable."

Respondents are correct. While the harm Mendoza faces is significant, it is not irreparable. Even if an injunction does *not* issue, Mendoza will still be represented by counsel during the state court trial and, if convicted, she will have the right to appeal that conviction in

---

[20] *Hobby Lobby*, 723 F.3d at 1128 (quoting *Okla. ex rel. Okla. Tax Comm'n v. Int'l Registration Plan, Inc.*, 455 F.3d 1107, 1113 (10th Cir. 2006)).

[21] *Valley Community Preservation Comm'n v. Mineta*, 373 F.3d 1078, 1084 (10th Cir. 2004).

[22] TRO Motion at 15-16.

[23] Opposition to Motion for Preliminary Injunction ("Opposition Memo") at 16, docket no. 21, filed September 11, 2015.

[24] *Id.* at 17.

Utah and federal courts. Therefore the harm is not irreparable and this factor does not weigh in favor of granting the TRO Motion.

### *Balance of Harms*

With respect to the balance of harms, Mendoza argues there is "little possibility of harm to the general public if the requested relief is granted" because such relief would clarify "that every citizen in Utah is protected under the 6th Amendment of the United States Constitution."[25] Mendoza also argued at the September 24 hearing that requiring her to go through a trial that is eventually declared null and void will severely disadvantage her in any future proceedings because she will have revealed her defense to the prosecution.

The Respondents argue that "Mendoza has not shown the alleged harm she faces outweighs the injury that the State—including the victim's family—will suffer."[26] The Respondents argue that the "victim's representative . . . has a statutory right to a speedy resolution of the criminal process,"[27] and the state court trial must be allowed to move forward as planned. Respondents state that "Mendoza's trial is scheduled for November 2015 and any delay will necessarily impinge upon the victim representative's right to a prompt disposition of the charges."[28] At the September 24 hearing, Respondents also argued that Weber County would face large costs if the statute were invalidated and it were required to pay for experts and investigators in cases where a defendant is not represented by a public defender. These considerations, according to the Respondents, show that the balance of harms weighs in favor of the Respondents.

---

[25] TRO Motion at 16.

[26] Opposition Memo at 17.

[27] *Id.* at 18 (citing Utah Code §§ 77-38-7(1)-(2); 77-38-9(2)).

[28] Opposition Memo at 18.

On this point, Mendoza is correct. Mendoza faces significant harm by being required to go through a trial that may ultimately be held invalid. While that harm is not certain or irreparable, the allegations Mendoza makes, which deal with harm to her liberty and constitutional rights, are enough to outweigh the Respondents' concerns, which are largely budgetary and do not involve liberty. Moreover, since the Respondents are not victims or the victim's representative, the Respondents cannot advance the victim representative's rights as weighing in their favor for purposes of the "balance of harms" analysis. Respondents' focus on the victim representative's rights is more appropriately addressed in the "public interest" section of this analysis, and it is reserved for that section. Therefore, the balance of harms weighs in favor of Mendoza and this factor supports granting the TRO Motion.

### *Public Interest*

Mendoza advances the same argument, word for word, about the public interest, as she advanced under the "balance of harms" analysis. That is, she argues that "[i]f the requested relief is granted it actually benefits the general public as then it will be clear that every citizen in Utah is protected under the 6th Amendment of the United States Constitution."[29] The Respondents argue that Mendoza is incorrect, and the benefit to the public when Sixth Amendment rights are protected "is already clear."[30] Respondents argue that "issuing an injunction that halts a state criminal prosecution will not make that proposition any clearer."[31] Respondents argue that "injunctive relief will be adverse to the public interest," and what is really in the public interest

---

[29] TRO Motion at 16.

[30] Opposition Memo at 18.

[31] *Id.*

"is that the State of Utah be permitted to enforce its criminal laws, prosecute an individual who has allegedly cause the death of another, and complete the state criminal process."[32]

The public interest factor does not weigh in any party's favor. Mendoza is correct that the public has an interest in seeing that constitutional rights are protected. But Respondents are also correct that the public has an interest in seeing that the victim representative's rights are recognized. The public also has an interest in seeing that its duly enacted legislation is enforced, and that the established indigent defense system is not disrupted unnecessarily. Respondent and Mendoza are both correct that a prompt resolution to criminal prosecutions is an important consideration to the public (and to the parties) as well. Thus, the public interest factor does not favor any party.

### *Substantial Likelihood of Success*

Because the first three factors do not tip "strongly"[33] in Mendoza's favor, the relaxed standard for "likelihood of success" does not apply. Accordingly, Mendoza will be required to show that there is a "substantial likelihood" that she will succeed on the merits of her case. "Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."[34]

Mendoza advances two main arguments. First, she argues that the Utah Indigent Defense Act ("IDA") takes away her right to the counsel of her choice.[35] Second, she argues that the IDA takes away her "separate right to the basic tools of a complete defense."[36] Each of these arguments will be addressed in turn.

---

[32] *Id.*

[33] *Hobby Lobby*, 723 F.3d at 1128.

[34] *Valley Community*, 373 F.3d at 1084.

[35] TRO Motion at 2.

[36] *Id.*

    (1)  The IDA Does Not Eliminate Mendoza's Ability to Choose Counsel.

   The Sixth Amendment guarantees that in "all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."[37] "[T]he purpose of providing assistance of counsel is simply to ensure that criminal defendants receive a fair trial[.]"[38] "[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."[39]

   In *Wheat*, a criminal defendant was represented by counsel but desired to be represented by another attorney who was already engaged in the representation of other codefendants in the same criminal case.[40] The government opposed the substitution of counsel, arguing that representation of codefendants by the same attorney would create a possible conflict of interest.[41] The defendant moved for substitution of counsel, arguing he had the "right to have counsel of his own choosing" under the Sixth Amendment.[42] But the district court, concerned with the potential "irreconcilable" conflict of interest, denied the motion and the defendant was required to proceed to trial with his original counsel.[43] The defendant was convicted and appealed, arguing he was deprived of his ability to be represented by the counsel of his choice. But the Ninth Circuit affirmed.[44] The Supreme Court also affirmed, holding that the district court's "refusal to permit

---

[37] U.S. Const. amend. VI.

[38] *Wheat v. United States*, 486 U.S. 153, 159 (1988) (internal quotation marks omitted).

[39] *Id.*

[40] *Id.* at 154-55.

[41] *Id.* at 155.

[42] *Id.* at 156.

[43] *Id.* at 157.

[44] *Id.*

the substitution of counsel in this case was within its discretion and did not violate petitioner's Sixth Amendment rights."[45] The Supreme Court also explained that the "Sixth Amendment right to choose one's own counsel is circumscribed in several important respects. . . . [For example, an] advocate who is not a member of the bar may not represent clients . . . in court. Similarly, a defendant may not insist on representation by an attorney he cannot afford or who for other reasons declines to represent the defendant."[46] And, under the circumstances of *Wheat*, an attorney could not represent a defendant where such representation would create a conflict of interest. Thus, *Wheat* made it clear that the right to be represented by an attorney of one's choosing is not an absolute right.

In *Earl*,[47] the Utah Supreme Court reiterated that the right to be represented by an attorney of one's choosing is not absolute. The defendant in *Earl* applied for state funding of defense resources[48] but her request was denied.[49] She challenged the decision, arguing that "by depriving her of state funding for her private counsel of choice, the . . . IDA violated her constitutional right to effective assistance of counsel."[50] In rejecting this argument, the Utah Supreme Court explained that the "constitutional right to counsel encompasses the prerogative of choosing counsel of one's choice and of receiving resources necessary to an adequate defense," but instructed that "[s]uch rights are qualified ones."[51] The Court explained that if "a defendant elects an avenue that steers away from the public representation provided by the government, *she*

---

[45] *Id.* at 164.

[46] *Id.* at 159.

[47] *State v. Earl*, 345 P.3d 1153 (Utah 2015).

[48] The opinion does not specify the types of resources sought.

[49] *Earl*, 345 P.3d at 1155.

[50] *Id.*

[51] *Id.* at 1158.

*has received the private counsel of her choice* and has no constitutional right to defense resources from a secondary source backed by government funding."[52]

The Utah Supreme Court went on to explain that the United States Supreme Court "has not prescribed a single orthodoxy" for Sixth Amendment guarantees:

> In our state the Legislature has chosen to couple the availability of defense resources with the retention of government-funded counsel. Thus, a defendant has every right to decline the counsel the government offers in favor of the one she prefers, but in so doing, she loses the right to a publicly funded defense.[53]

Applying *Wheat* and *Earl* to Mendoza's case, it is clear that Mendoza has not been deprived of her right to the counsel of her choice. Unlike *Wheat*, where the defendant was actually *prohibited* from using the attorney he desired, Mendoza was able to freely choose an attorney to represent her. And like in *Earl*, Mendoza has "received the private counsel of her choice." No court has blocked Mendoza's choice of counsel, and Mendoza has not shown a provision in the IDA that prohibits her from selecting an attorney of her choosing. Therefore, Mendoza's argument that her right to choose counsel cannot be regulated or controlled by the State is foreclosed by *Wheat* and *Earl* because the right to choose counsel is not an unfettered right and Mendoza has been able to select the counsel of her choice.

Mendoza attempts to use *Gonzalez-Lopez*[54] to support her position, but it does not. In *Gonzalez-Lopez*, a criminal defendant hired a private attorney named John Fahle to represent him. A second attorney by the name of Joseph Low contacted the defendant and asked if the defendant was interested in representation from Low in the criminal proceedings. The defendant agreed, and sometime later, both Fahle and Low represented the defendant in an evidentiary hearing. Because Low was an out-of-state attorney, he asked the court if he could participate in

---

[52] *Id.* (emphasis added).

[53] *Id.*

[54] *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006).

the hearing on the condition that he immediately file a motion for *pro hac vice*. The judge

agreed, but later in the hearing the judge revoked the provisional *pro hac vice* acceptance

because Low had passed notes to Fahle during cross-examination, thereby violating a court rule

that prohibited more than one attorney from engaging in cross-examination.[55] Low moved for

admission several more times, but his motions were rejected (for conduct in a separate case—

violating a rule of professional conduct that prohibited an attorney from contacting a currently-

represented defendant). Fahle withdrew and Gonzalez-Lopez was required to proceed to trial

with a different privately-retained attorney by the name of Karl Dickhaus  The jury found the

defendant guilty. The defendant appealed.[56]

   On appeal, the Eighth Circuit vacated the conviction, finding that the district court's

refusal to allow Low represent defendant was "erroneous and violated respondent's Sixth

Amendment right to paid counsel of his choosing."[57] The Supreme Court agreed, holding that

under these circumstances, the defendant's right to choose his counsel was violated by the

district court's incorrect decision to exclude Low. The Supreme Court explained that a "choice-

of-counsel violation occurs *whenever* the defendant's choice is wrongfully denied[,]"[58] and that

the "[d]eprivation of the right [to be assisted by counsel] is 'complete' when the defendant is

erroneously prevented from being represented by the lawyer he wants, regardless of the quality

of the representation he received."[59]

   What happened in *Gonzalez-Lopez* has not happened to Mendoza. She has not been

denied the opportunity to retain a second private counsel. She has not had her counsel

---

[55] *Id.* at 142.

[56] *Id.* at 143.

[57] *Id.* at 143-44.

[58] *Id.* at 150 (emphasis in original).

[59] *Id.* at 148.

disqualified based on an erroneous ruling that her attorney violated a rule of professional

conduct. In fact, she has not had any counsel disqualified at all, so she has had no need to move

to admit wrongfully-disqualified counsel. Thus, Mendoza's right to choose counsel is not being

denied, let alone being "wrongfully" or "erroneously" denied as described in *Gonzalez-Lopez*.

Moreover, even though *Gonzalez-Lopez* held that the defendant's right to choose counsel had

been violated under the circumstances of that case, the Supreme Court was careful to explain that

the right to counsel of choice is not an unqualified right.[60] The sweeping language of *Gonzalez-*

*Lopez* must be read in its context, which is narrow. Against concerns of regulating admission of

out-of-state lawyers, the right to counsel of choice is pre-eminent.

        And although Mendoza cites *United States v. Mendoza-Salgado*[61] in support of her

argument, *Mendoza Salgado* dealt with the "right to privately retain counsel of choice,"[62] a right

that has not been denied to Mendoza because she was allowed to retain a private attorney to

represent her in this case.

        Therefore, because the right to choose counsel is not an absolute right, and because

Mendoza's ability to select an attorney has not been abrogated, Mendoza has not shown that she

would be likely to succeed on the merits of her argument that the IDA takes away her ability to

select the counsel of her choice.

                (2)      The IDA Does Not Take Away Mendoza's Right to the Basic Tools of a
                         Complete Defense

        In addition to arguing that she has a right to select the counsel of her choice, Mendoza

claims the IDA takes away her "separate and co-equal right to be provided with the resources

---

[60] *Id.* at 151 (explaining that "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them.").

[61] *United States v. Mendoza-Salgado*, 964 F.2d 993 (10th Cir. 1992).

[62] *Id.* at 1014.

necessary to prepare and present a complete and effective defense."[63] She argues that by requiring her to choose between appointed counsel (which would give her access to state-funded defense resources) and private counsel (which eliminates her ability to obtain state-funded defense resources), she is deprived of the basic tools of a complete defense. This is a closer call than Mendoza's previous argument.

Mendoza is correct that "a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that the defendant has access to the *raw materials* integral to the building of an effective defense[,]"[64] and has "an adequate opportunity to present their claims fairly within the adversary system" by having the "*basic tools* of an adequate defense or appeal."[65] However, she has failed to show there is a "clear and unequivocal" right to have a State pay for defense resources when she has chosen to be represented by private counsel.

First, Mendoza rests her argument on the assumption that it is impossible for her to receive effective assistance from appointed counsel in Weber County. She asserts that the "indigent defense program in Weber County is deficient on its face" because the indigent defense services in Weber County are overworked and underfunded.[66]  She claims that the case load for a public defender in Weber County is "more than 150 felonies per year and 400 misdemeanors per year."[67] She asserts that "[i]n 2010, the per capita rates was [sic] $4.81 for indigent defense funding"—an amount that is "actually less than a sandwich at a Subway restaurant."[68] These

---

[63] TRO Motion at 4.

[64] *Ake v. Oklahoma*, 470 U.S. 68, 77 (1985) (emphasis added).

[65] *Id.*

[66] TRO Motion at 5.

[67] *Id.* at 8.

[68] *Id.* at 5.

deficiencies, according to Mendoza, render it impossible for her to "come close to an appropriate representation for the charge of murder" by using Weber County's indigent defense services.[69]

However, as Respondents point out,[70] Mendoza provides nothing more than assertions from counsel to prove that public defenders in Weber County are incapable of providing effective assistance of counsel. She has not substantiated the financial facts with evidence. And most importantly, Mendoza has not identified a Weber County public defender that has provided ineffective representation to an indigent defendant.[71] She has not presented evidence that Weber County hires only a single investigator, or presented support that a single investigator is per se inadequate.[72] She has not shown that the Weber County indigent defense system is in fact underfunded or that the funds that are provided are insufficient to allow the County to provide adequate defense for indigent defendants.[73] In short, Mendoza's argument that she cannot receive adequate assistance through the public defender system in Weber County is based on unsubstantiated facts and argument unsupported by controlling authority. Thus, although Mendoza would like to proceed under the assumption that retaining a private attorney is her only option, it is not. She has full discretion, at any time, to choose to be represented by appointed counsel and thereby be assured that the State will fund the "raw materials" and "basic tools" Mendoza alleges she needs for a complete defense.

Second, *Ake*, a case which is relied upon by Mendoza when arguing that she is being deprived of the tools of a complete defense,[74] is different than Mendoza's case. In *Ake*, the

---

[69] *Id.* at 10.

[70] Opposition Memo at 13-16

[71] *Id.* at 14.

[72] *Id.*

[73] *Id.* at 15.

[74] TRO Motion at 4.

United States Supreme Court held that the use of a state-funded psychiatrist was a "basic tool of a complete defense," but only if a defendant's mental condition is "relevant to his criminal culpability and to the punishment he might suffer[.]"[75] In such instances, "the assistance of a psychiatrist may well be crucial to the defendant's ability to marshal his defense."[76] The Court instructed that psychiatric evaluations have a unique place in a criminal trial because "without the assistance of a psychiatrist to conduct a professional examination on issues relevant to the defense . . . the risk of an inaccurate resolution of sanity issues is extremely high."[77] Thus, the Supreme Court particularly identified the services of a *psychiatrist*, and said such services were needed *when mental health was at issue*. Here, Mendoza's mental health has not been alleged to be at issue, and Mendoza is not seeking the specific services of a psychiatric evaluation. *Ake* does not stand for the proposition that *every* expert or investigator is a "basic tool of a complete defense" or that it is the state's obligation to pay for experts and investigators when a defendant is privately represented. (The defendant in *Ake* was indigent, but it is unclear from the decision whether he was represented by a public defender or retained private counsel.)

     *Earl* is very persuasive. *Earl* described that under the IDA, a criminal defendant cannot receive public defense resources such as expert and investigative costs if he or she chooses to be represented by private counsel.[78] *Earl* recognized that "[a]n indigent defendant has a right to the 'basic tools of an adequate defense,'" but "not 'the legal arsenal that may be privately retained by a criminal defendant.'"[79] *Ake* also clarified that the United States Supreme Court had never

---

[75] *Ake*, 470 U.S. at 80.

[76] *Id.*

[77] *Id.* at 82.

[78] *Earl*, 345 P.3d at 1154-55 (citing Utah Code § 77-32-303(2)).

[79] *Earl*, 345 P.3d at 1158 (quoting *Britt v. North Carolina*, 404 U.S. 226, 227 (1971); *Ross v. Moffitt*, 417 U.S. 600, 616 (1974)).

held that a State "must purchase for the indigent defendant all the assistance that his wealthier counterpart might buy."[80] These cases stand for the proposition that a State may constitutionally condition receipt of publicly-funded defense resources on the acceptance of representation by a public defender.

The reason a state may do this, according to *Earl*, is for "economic efficiency."[81] There is a "legitimate interest in maintaining the control necessary to ensure that the funds that are dedicated to indigent legal defense are not abused or wasted, and that legal defense services are provided effectively and efficiently."[82] A state is therefore "well within the bounds of rationality in asserting an interest in ensuring for government the oversight, control, and efficiency associated with the single-source approach to indigent defense resources[.]"[83]

A law review article cited by Mendoza[84] argues that *Earl* is incorrect.[85] Professor Gross argues that:

> The "single-source approach" does not affect those defendants who are too poor to hire an attorney or those defendants wealthy enough to both retain counsel and pay the cost of whatever additional defense resources are necessary to adequately prepare for trial. But marginally indigent defendants who have the financial resources to retain counsel, but are unable to afford additional "defense resources," are forced by the single-source approach to waive either their Sixth Amendment right to counsel of choice or their Fourteenth Amendment right to "the basic tools of an adequate defense."[86]

---

[80] *Ake*, 470 U.S. at 77.

[81] *Earl*, 345 P.3d at 1160.

[82] *Id.* at 1159.

[83] *Id.*

[84] Response to Motion to Dismiss Mendoza's Petition; Response to Motion to Dismiss Weber County as a Defendant; Reply to Objection to Preliminary Injunction ("23 Response") at 5 n.15, docket no. 23, filed September 14, 2015.

[85] John P. Gross, *Representation by Counsel or Access to Defense Resources: Utah's Single Source Approach to Indigent Defense*, 72 Wash. & Lee L. Rev. Online 51 (2015), http://scholarlycommons.law.wlu.edu/wlulr-online/vol72/iss1/3.

[86] *Id.* at 54.

Professor Gross explains that the defendant in *Earl* was asking for "merely the right to retain counsel of [her] own choosing if [she] was financially able, *and what [she was] constitutionally entitled to under* Ake—the raw materials integral to the building of an effective defense."[87] He argues that the IDA "unconstitutionally bundles the Sixth Amendment right to counsel of choice and the Fourteenth Amendment's guarantee of the basic tools of an adequate defense."[88] Mendoza does not point to any court decision that adopts this reasoning.

Mendoza wants the ability to hire her own private attorney but also wants to receive the benefits of the services and tools available to defendants who accept appointment of a public defender. In essence, she takes the same position as the defendant in *Earl*, that she has a "right to 'meaningful access to justice' and an 'adequate opportunity to present [her] claims fairly within the adversary system,'—a right that, in her view, cannot be conditioned on the retention of a 'public[ly] appointed lawyer."[89] She argues that requiring her to choose between public defense and her preferred attorney poses an "unconstitutional choice;" either she gives up her right to choose her own counsel or she gives up her right to the basic tools of an adequate defense.

Mendoza argues that *Simmons*[90] supports her "unconstitutional choice" argument because it stands for the proposition that she cannot be forced to surrender one constitutional right in order to assert another.[91] However, Mendoza is incorrect. While *Simmons* did say that it was "intolerable that one constitutional right should have to be surrendered in order to assert

---

[87] *Id.* at 63-64 (internal quotation marks omitted).

[88] *Id.* at 64.

[89] *Earl*, 345 P.3d at 1158 (alterations in original; internal citations omitted).

[90] *Simmons v. United States*, 390 U.S. 377 (1986).

[91] 23 Response at 6, 13.

another," the Supreme Court limited its holding to the circumstances of that case.[92] Further, the statement about surrendering one constitutional right at the expense of another was made in the context of the Fourth and Fifth Amendments, not the Sixth Amendment and the right to due process, which distinguishes it from this case.[93] Therefore, Mendoza's argument fails because:

> [a]lthough a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose. The threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved.[94]

Here, Mendoza fails to show that the requirements of the IDA impair to an appreciable extent the policies behind the Sixth Amendment. As noted above, "the purpose of providing assistance of counsel is simply to ensure that criminal defendants receive a fair trial[.]"[95] "[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."[96]

Similarly, Mendoza cannot show that the IDA impairs the policies expressed in the 14th Amendment. The 14th Amendment requires a "State . . . , as a matter of equal protection, [to] provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners."[97] The United States Supreme Court has

---

[92] *Simmons*, 390 U.S. at 394 (stating under "these circumstances"); *see also McGautha v. California*, 402 U.S. 183, 212-13 (1971) (stating that *Simmons* "certainly cannot be given the broad thrust which is attributed to it by [the defendant] in the present case").

[93] *Simmons*, 390 U.S. at 394.

[94] *McGautha*, 402 U.S. at 213.

[95] *Wheat*, 486 U.S. at 159 (internal quotation marks omitted).

[96] *Id.* at 159.

[97] *Britt*, 404 U.S. at 227.

instructed that the "outer limits of that principle are not clear[.]"[98] Similarly, the Fourteenth Amendment's due process guarantee of fundamental fairness [] derives from the belief that justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake."[99] Because the due process and equal protection requirements are "not clear" in the context of indigent defense, it is difficult for Mendoza to show how she is being denied the basic tools of an adequate defense under the IDA—especially since the IDA *does* provide for funding of defense resources if she elects to be represented by a public defender. By allowing indigent defendants access to funding for defense resources, the State of Utah is making available the "basic tools for an adequate defense." *Earl* concluded that the IDA does *not* violate equal protection because there is a "rational" and "legitimate interest in maintaining the control necessary to ensure that the funds that are dedicated to indigent legal defense are not abused or wasted, and that legal defense services are provided effectively and efficiently."[100] Mendoza does not show otherwise.

Under existing authority, Mendoza fails to show there is a "clear and unequivocal" right to be represented by private counsel *and also* have the state pay for defense resources. Mendoza can be assured of receiving everything she requests (counsel and resources) by accepting representation by a public defender. Because she has retained private counsel, she has exercised her right to choose an attorney of her preference, and under the IDA, she must forego funding for defense resources. None of the case law presented by Mendoza shows clearly and unequivocally that this is unconstitutional. In fact, the decision most directly on point—*Earl*—holds just the

---

[98] *Id.*

[99] *Ake*, 470 U.S. at 76.

[100] *Earl*, 345 P.3d at 1159.

opposite. Accordingly, Mendoza has not shown that she has been denied her right to choose counsel or has been denied "the basic tools of an adequate defense."

Mendoza has not shown that the reasoning in *Earl* is incorrect or that it should be rejected. While she has *argued* that the Weber County indigent defense program is overworked and underfunded, she has provided no *evidence* to that effect. Nor has she shown that the State's proffered interests (maintaining the control necessary to ensure that the funds that are dedicated to indigent legal defense are not abused or wasted, and that legal defense services are provided effectively and efficiently)[101] are illegitimate. Accordingly, Mendoza has not shown that she is likely to succeed on the merits of this case and the TRO Motion is DENIED.

## MOTION TO STAY

Like the TRO Motion, the Motion to Stay requests that this court stay Mendoza's state court proceedings.[102] This is one of the same forms of relief requested in the TRO Motion (the other being an order requiring payment of fees).[103] Mendoza explains that a jury trial is set to begin November 30, 2015,[104] and failure to stay the state court proceedings "will inherently harm her based on a violation of the 6th Amendment."[105] She "requests an immediate stay . . . based upon 28 U.S.C. § 2251(a)(1)."[106]

28 U.S.C. § 2251(a)(1) provides that "[a] justice or judge of the United States before whom a habeas corpus proceeding is pending, may, before final judgment or after final judgment of discharge, or pending appeal, *stay any proceeding* against the person detained in *any State*

---

[101] *Id.*

[102] Motion to Stay at 1.

[103] TRO Motion at 16.

[104] Motion to Stay at 1-2.

[105] *Id.* at 2.

[106] *Id.*

*court or by or under the authority of any State* for *any matter* involved in the habeas corpus proceeding."[107]

Because Mendoza bases her Motion to Stay on her habeas corpus proceeding and the habeas corpus claims were dismissed,[108] the Motion to Stay is DENIED.

To the extent Mendoza seeks a stay based on her § 1983 claims, her request is denied based on well-settled principles of abstention.[109] In Mendoza's case, state judicial proceedings are ongoing, the state proceedings implicate an important state interest (enforcing its criminal laws and prosecuting an individual who has allegedly cause the death of another), and the Utah State court system provides an adequate avenue for relief.[110]

## MOTION TO DISMISS WEBER COUNTY

Based on this court's prior dismissal of the habeas corpus claims,[111] the Motion to Dismiss Weber County[112] is MOOT.

## MOTION TO DISMISS PETITION

The Motion to Dismiss Petition[113] is GRANTED IN PART and DENIED IN PART. The Motion to Dismiss Petition was effectively granted in part when the court entered an order[114] dismissing the habeas claims brought under 28 U.S.C. § 2241. However, the prior order did not

---

[107] 28 U.S.C. § 2251(a)(1) (emphasis added).

[108] Memorandum Decision and Order Dismissing Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, docket no. 25, entered September 16, 2015.

[109] *Younger v. Harris*, 401 U.S. 37 (1971).

[110] *See Winnebago Tribe of Nebraska v. Stovall*, 341 F.3d 1202, 1204 (10th Cir. 2003) (outlining factors when courts must abstain).

[111] Memorandum Decision and Order Dismissing Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, docket no. 25, entered September 16, 2015.

[112] Motion to Dismiss Weber County as a Respondent in Petitioner's Habeas Petition ("Motion to Dismiss Weber County"), docket no. 16, filed September 3, 2015.

[113] Motion to Dismiss Petition for Writ of Habeas Corpus and Memorandum in Support ("Motion to Dismiss Petition"), docket no. 20, filed September 11, 2015.

[114] Memorandum Decision and Order Dismissing Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, docket no. 25, entered September 16, 2015.

discuss the claims for relief under § 1983.[115] Although Respondents argued at the September 24 hearing that the proper avenue to bring a § 1983 claim is through a separately-filed complaint, this argument was not raised in the Respondents' briefing. There are allegations in the Petition that seem to be sufficient to state such a claim, though that sufficiency is yet untested by motion. Mendoza's Petition will, from this time forward, until further challenged, be treated as a complaint for relief under § 1983.

## ORDER

IT IS HEREBY ORDERED that Mendoza's TRO Motion[116] and Motion to Stay[117] are DENIED.

IT IS FURTHER ORDERED that Respondent's Motion to Dismiss Weber County[118] is MOOT.

IT IS FURTHER ORDERED that Respondent's Motion to Dismiss Petition[119] is GRANTED IN PART and DENIED IN PART.

Dated September 28, 2015.

BY THE COURT:

David Nuffer
United States District Judge

---

[115] Memorandum Decision and Order Dismissing Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 at 12, docket no. 25, entered September 16, 2015.

[116] Motion & Memorandum of Points and Authorities in Support of Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Motion"), docket no. 3, filed July 14, 2015.

[117] Expedited Motion and Memorandum of Law to Stay State Court Proceedings ("Motion to Stay"), docket no. 10, filed July 22, 2015.

[118] Motion to Dismiss Weber County as a Respondent in Petitioner's Habeas Petition ("Motion to Dismiss Weber County"), docket no. 16, filed September 3, 2015.

[119] Motion to Dismiss Petition for Writ of Habeas Corpus and Memorandum in Support ("Motion to Dismiss Petition"), docket no. 20, filed September 11, 2015.